Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 3, 2021

**2021 CO 26**

**No. 20SA293,** *People v. Moore*—**Insanity—Not Guilty by Reason of Insanity Plea—Expert Mental Condition Evidence—Self-Defense.**

In this opinion, the supreme court holds that, absent an insanity plea, the trial court must exclude any evidence that is probative of insanity, as that term has been defined by the legislature, irrespective of the ostensible purpose for which it is offered. The court must therefore exclude parts of the proposed testimony that tend to prove that the defendant (a) was so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong, or (b) suffered from a condition of mind caused by mental disease or defect that prevented the defendant from forming a culpable mental state that is an essential element of a crime charged. For a defendant's mental condition to implicate the statutory definition of "mental disease or defect" at the time of the offense, it must have been so severely abnormal that it grossly and demonstrably impaired the defendant's perception or understanding of reality, without being

attributable to the voluntary ingestion of drugs or alcohol. The court must parse any proffered mental condition evidence to distinguish what is probative of insanity under this exacting definition from what is not.

Therefore, the district court's order allowing the blanket admission of mental condition evidence is vacated.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2021 CO 26

---

**Supreme Court Case No. 20SA293**
*Original Proceeding Pursuant to C.A.R. 21*
District Court, City and County of Denver, Case No. 19CR2201
Honorable Edward D. Bronfin, Judge

---

**In Re
Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Aundre D. Moore.

---

**Rule Made Absolute**
*en banc*
May 3, 2021

---

**Attorneys for Plaintiff:**
Beth McCann, District Attorney, Second Judicial District
Jeff M. Van der Veer, Deputy District Attorney
*Denver, Colorado*

**Attorneys for Defendant:**
Megan A. Ring, Public Defender
Sarah Varty, Deputy Public Defender
Robert Halpern, Deputy Public Defender
*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     The Denver District Attorney has charged Aundre Moore with first degree murder for the shooting death of Jamaica McClain.  Moore has pleaded not guilty and is awaiting trial.  He claims that he acted in self-defense, and he intends to introduce evidence of his pre-existing mental illness to help show why he subjectively believed he was in imminent danger and needed to use deadly force to repel McClain.

¶2     The prosecution moved to exclude evidence of Moore's mental condition, arguing that it is inadmissible unless he pleads not guilty by reason of insanity ("NGRI")—an affirmative defense that Moore has said he doesn't plan to invoke. The district court denied the prosecution's motion, reasoning that Moore's stated purpose in offering the mental condition evidence is to prove the subjective belief component of his self-defense claim, not to prove insanity.  Therefore, the court ruled that it would allow, without an insanity plea, expert testimony by a psychologist and a forensic psychiatrist who examined Moore, so long as their testimony otherwise conforms to the rules of evidence.  The prosecution then filed a petition pursuant to C.A.R. 21, and we issued an order to show cause.

¶3     We conclude that, absent an insanity plea, the trial court must exclude any evidence that is probative of insanity, as that term has been defined by the legislature, irrespective of the ostensible purpose for which it is offered.  The court must therefore ask: Does some or all of the proposed testimony tend to prove that

2

the defendant (a) was so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong, or (b) suffered from a condition of mind caused by mental disease or defect that prevented the defendant from forming a culpable mental state that is an essential element of a crime charged?

¶4 Critically, however, this question involves an often-neglected threshold issue: the existence of "a mental disease or defect." For a defendant's mental condition to implicate the statutory definition of mental disease or defect at the time of the offense, it must have been so *severely* abnormal that it *grossly and demonstrably impaired the defendant's perception or understanding of reality* (without being attributable to the voluntary ingestion of drugs or alcohol).

¶5 This means that evidence of less-severe mental illness remains admissible, absent an insanity plea, if it otherwise conforms to the statutory requirements and the rules of evidence. The court must parse any proffered mental condition evidence, line by line if necessary, to distinguish what is probative of insanity under this exacting definition from what is not.

¶6 We therefore make the rule absolute and remand the case to the district court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶7 The charges against Moore stem from an incident that occurred on March 21, 2019. That evening, Moore met D.E. in a motel lobby. The two spent some time together before deciding to grab a drink at a bar in the Park Hill neighborhood. Moore drove D.E. to the bar and backed his car into a spot in the bar's parking lot. As Moore and D.E. were sitting in Moore's car, another car pulled into the parking lot and stopped in front of them, blocking their exit. McClain, with whom Moore was acquainted, exited the driver's side of the other car and approached the driver's side of Moore's car. Moore got out of his car. The two appeared to argue before Moore shot McClain in the head. Subsequent investigation revealed that McClain was unarmed. That much appears to be undisputed.

¶8 The prosecution charged Moore with first degree murder, among other crimes. Moore contends that he acted in self-defense. He plans to present evidence that he knew McClain was an active gang member with a reputation for carrying a gun; that McClain got out of his car and started yelling at Moore, posturing to fight; that he saw McClain reach into his car before approaching him; and that McClain continued to approach him in an aggressive manner despite Moore's repeated warnings to "back up."

4

¶9 To further support his self-defense claim, Moore seeks to present expert testimony about his mental condition at the time of the offense. He filed a notice with the district court of his intent to do so pursuant to section 16-8-107(3)(b), C.R.S. (2020), and he retained a psychologist, Dr. Jane Wells, who evaluated him. Dr. Leah Brar, a forensic psychiatrist, also conducted a mandatory examination on behalf of the state pursuant to section 16-8-106, C.R.S. (2020).

¶10 Because the reports from the two evaluations are relevant to our decision, we summarize their content in some detail.[1]

¶11 Dr. Wells's report explains that Moore experienced numerous traumatic events related to gun violence. She notes that Moore's grandfather was shot and killed around the corner from where he lived; two of Moore's friends were shot in Park Hill; Moore himself was previously shot at on two separate occasions, one of

---

[1] The reports of the evaluations are suppressed; however, Moore's attorneys referenced the content of the reports in their brief and discussed them openly during oral argument. Therefore, Moore has at least implicitly waived the confidentiality of the reports for the purposes of this original proceeding. *See Clark v. Dist. Ct.*, 668 P.2d 3, 10 (Colo. 1983) (noting that when the privilege holder pleads a mental condition as an affirmative defense, "the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition").

which was in Park Hill; a friend of Moore's was kidnapped and killed; and Moore lost two other friends to gun violence.

¶12 Dr. Wells also recounts that Moore was hospitalized about twenty years ago with delusional psychosis. He was later diagnosed with bipolar disorder and was briefly medicated, although he wasn't taking any psychotropic medications on the date of the alleged offense.

¶13 Dr. Wells opines that Moore has a cyclical mood disorder, a paranoid thought process, and displays symptoms of trauma. She diagnosed him with bipolar disorder I (most recent episode mixed with paranoid ideation). She notes that, although Moore exhibits some symptoms of post-traumatic stress disorder ("PTSD"), he doesn't meet the criteria for that diagnosis. Instead, she diagnosed him with other specified trauma- and stressor-related disorder. Dr. Wells described this disorder as a condition where symptoms of PTSD are present but don't meet the threshold for a PTSD diagnosis.

¶14 Dr. Wells finds that Moore's thinking "tends to be distorted with psychotic qualities" and that "[t]rauma symptoms also contributed to his paranoid ideation, hyper-vigilance, agitation[,] and his feelings of vulnerability." She further notes that, at the time of the offense, Moore had an elevated mood, which "may have led him to feel grandiose, energetic[,] and overly[]confident in his conclusions." Dr. Wells concludes that, although "Moore shot an unarmed person for no clear

6

reason," it is "likely that his mental state contributed to how he perceived the situation and his decision-making."

¶15 Dr. Brar, for her part, acknowledges the traumatic events that Moore experienced, and she too diagnosed him with other specified trauma- and stressor-related disorder. Additionally, she found that Moore met the criteria for the following diagnoses at the time of the alleged offense: unknown substance intoxication, other specified bipolar and related disorder, severe alcohol use disorder, severe cannabis use disorder, and moderate other hallucinogen (ecstasy) use disorder.

¶16 Still, Dr. Brar concludes that, at the time of the incident, Moore "*did not* suffer from a severe, abnormal mental condition [that] grossly and demonstrably impaired his perception or understanding of reality," and "*was not* so diseased or defective in mind . . . as to be incapable of distinguishing right from wrong with respect to the alleged acts or to be prevented from forming the culpable mental states." She notes that, although Moore "experience[d] potential impairments in perception and reality testing," in her opinion, those impairments "were likely secondary to the voluntary ingestion of substances" and were unrelated to mania or psychosis. Additionally, she opines that "Moore's trauma-related disorder and intoxication likely . . . influence[d] his decision-making during the alleged events, even if they did not rise to [the] level of . . . a mental disease or defect."

7

¶17 The prosecution moved to exclude evidence of Moore's mental condition, arguing that it is inadmissible pursuant to section 16-8-107(3)(a) because it constitutes evidence "relevant to the issue of insanity" and Moore hasn't pleaded insanity.

¶18 The district court denied the prosecution's motion and held that evidence of Moore's mental condition may be admissible at trial even if he doesn't plead NGRI. The court reasoned that the evidence was admissible pursuant to section 16-8-107(3)(b) to prove Moore's subjective belief in the need for self-defense.

¶19 The prosecution then filed this original proceeding, and we issued an order to show cause.[2]

## II. Analysis

¶20 We begin by addressing our jurisdiction to hear this appeal. We then identify the applicable standards of review and revisit familiar principles of

---

[2] The issue before us, as framed by the prosecution in their petition, is:

> If a defendant attempts to defend a murder charge by pointing to his bipolar disorder and PTSD symptoms—which led to "distorted [thinking] with psychotic qualities" at the time of the shooting—does the defendant have to plead insanity? Or can he evade that statutory pleading requirement by asserting that his mental condition relates to his claim of self-defense?

statutory interpretation before turning our attention to the core substantive question before us; namely, what evidence is "relevant to the issue of insanity" under section 16-8-107(3)(a).

## A. Original Jurisdiction

¶21 Relief under C.A.R. 21 is an extraordinary remedy that is limited in both purpose and availability. *People v. Rowell*, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159. Whether to exercise our original jurisdiction rests solely within our discretion. *See* C.A.R. 21(a)(1); *People v. Rosas*, 2020 CO 22, ¶ 19, 459 P.3d 540, 545.

¶22 We have exercised our original jurisdiction when the petition raised an issue of first impression that was of significant public importance, when a party would have otherwise suffered irreparable harm, or when the normal appellate process would prove inadequate. *Rosas*, ¶ 19, 459 P.3d at 545; *People v. Voth*, 2013 CO 61, ¶ 12, 312 P.3d 144, 148. The normal appellate process can be inadequate in a criminal case when the prosecution would be barred from retrying a defendant post-acquittal because of double jeopardy. *Voth*, ¶ 13, 312 P.3d at 148.

¶23 Exercise of our original jurisdiction is warranted in this case because the issue before us—whether evidence of a defendant's mental condition is admissible, absent a plea of insanity, to prove his subjective need for self-defense—is one of first impression. Moreover, the normal appellate process would be inadequate because the prosecution would be barred from retrying Moore

9

following an acquittal, even if they prevail on appeal. *See* § 16-12-102(1), C.R.S. (2020) (allowing the prosecution to appeal "any decision of a court in a criminal case upon any question of law" while also codifying the prohibition against double jeopardy); *see also People v. Gabriesheski*, 262 P.3d 653, 657 (Colo. 2011) (noting that an acquittal is a final judgment enabling the prosecution to appeal a question of law).

## B. Standards of Review

¶24 Having decided to exercise our original jurisdiction, we next address the standards of review that govern our analysis.

¶25 We review questions of law involving statutory construction de novo. *People v. Griego*, 2018 CO 5, ¶ 25, 409 P.3d 338, 342. In construing a statute, we interpret its plain language to give full effect to the intent of the General Assembly. *Id.* We construe undefined words and phrases according to their common usage. *Id.* When the statutory language is clear, we apply the plain and ordinary meaning of the provision and give consistent, harmonious, and sensible effect to each part of the statute. *Id.*

¶26 We review a trial court's evidentiary rulings for an abuse of discretion. *Venalonzo v. People*, 2017 CO 9, ¶ 15, 388 P.3d 868, 873. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

10

## C. What Constitutes Evidence "Relevant to the Issue of Insanity"

¶27     We begin with the language of the insanity statutes.  Section 16-8-101.5(1), C.R.S. (2020), provides two definitions of insanity:

> (a) A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act . . . or
>
> (b) A person who suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged . . . .[3]

The statute further defines "[m]ental disease or defect" as "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance." § 16-8-101.5(2)(c).  Thus, both forms of insanity—whether it be the incapacity to distinguish right from wrong or the inability to form a culpable mental state—require that, at the time of the alleged offense, the defendant suffered from a

---

[3] Section 16-8-101.5 defines insanity for offenses committed on or after July 1, 1995. § 16-8-101.5(3).  This definition incorporated the former affirmative defense of impaired mental condition into the defense of NGRI to "create a unitary process for hearing the issues raised" by the two defenses.  § 16-8-101.3, C.R.S. (2020).

11

severely abnormal mental condition that grossly and demonstrably impaired his perception or understanding of reality.

¶28 The admission of evidence related to insanity is governed by section 16-8-107(3)(a), which states that "[i]n no event shall a court permit a defendant to introduce evidence *relevant to the issue of insanity*, as described in section 16-8-101.5, unless the defendant enters a plea of not guilty by reason of insanity." (Emphasis added.)[4]

¶29 Because Moore offered mental condition evidence, not to prove insanity, but rather to shore up his self-defense claim, the district court concluded that the evidence was admissible. After a thorough review of this court's jurisprudence

---

[4] Section 16-8-107(3)(b) further outlines the notice requirements for all evidence related to a defendant's mental condition:

> Regardless of whether a defendant enters a plea of not guilty by reason of insanity pursuant to section 16-8-103, the defendant shall not be permitted to introduce evidence in the nature of expert opinion concerning his or her mental condition without having first given notice to the court and the prosecution of his or her intent to introduce such evidence and without having undergone a court-ordered examination pursuant to section 16-8-106.

There is no dispute here that Moore complied with this provision.

under section 16-8-107 and Colorado law governing self-defense, the district court reasoned that if "a defendant complies with the other requirements of [s]ection 3(b)," expert testimony about his "mental state or life experiences" is admissible to prove the "subjective part of a self-defense affirmative defense."

¶30 The prosecution counters that section 16-8-107(3)(a) prohibits the admission of any evidence relevant to insanity, regardless of the purpose for which it is offered. Therefore, the prosecution asserts that neither Dr. Wells nor Dr. Brar should be permitted to testify regarding Moore's mental condition at the time of the alleged offense. We agree with the prosecution that evidence probative of insanity must be excluded, but we disagree that this necessitates a blanket exclusion of all the proffered testimony at issue here.

¶31 The plain language of section 16-8-107(3)(a) limits the admission of evidence "*relevant* to the issue of insanity," regardless of its intended use. (Emphasis added.) The word "relevant" generally means "having significant and demonstrable bearing on the matter at hand" or "affording evidence tending to prove or disprove the matter at issue or under discussion." *Relevant*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/*relevant*; [https://perma.cc/7JLU-9ND3]. Black's Law Dictionary likewise defines "relevant" as "[l]ogically connected and tending to

13

prove or disprove a matter in issue" or "having appreciable probative value." *Relevant*, Black's Law Dictionary (19th ed. 2019).

¶32   These dictionary definitions comport with the definition of "relevant evidence" under the Colorado Rules of Evidence, which encompasses "evidence having any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." CRE 401.

¶33   This leads us to conclude that the plain meaning of "relevant" evidence under section 16-8-107(3)(a) is evidence that falls within the Colorado Rules of Evidence's definition of "relevant evidence." Thus, evidence that is "relevant to the issue of insanity" is evidence that tends to prove or disprove the issue of insanity — that is, evidence that is probative of what is defined as insanity.

¶34   Significantly, neither section 16-8-101.5(1), which defines insanity, nor section 16-8-107(3)(a), which limits the admission of evidence "relevant to the issue of insanity," regulates the admission of insanity-related evidence based on the defendant's ostensible *purpose* for offering it. Under the plain language of the insanity statutes, the *probative effect* of the mental condition evidence is what governs, not the *purpose* for which it is offered.

¶35   This conclusion is well supported by our prior decisions. For example, in *People v. Wilburn*, 2012 CO 21, ¶¶ 1–3, 272 P.3d 1078, 1079, we considered whether a defendant's intention to put on evidence about a learning disability required the

14

defendant to plead NGRI. In that case, the defendant was charged with violating his bond conditions for failing to appear in court. *Id.* at ¶ 6, 272 P.3d at 1080. He argued that he miswrote the court date and sought to admit expert testimony regarding his dyslexia to support his mistake-of-fact defense and to negate the requisite culpable mental state. *Id.* at ¶¶ 7–8, 272 P.3d at 1080. But the prosecution insisted, and the trial court agreed, that he had to plead NGRI before he could seek admission of such evidence. *Id.* at ¶¶ 12, 14, 272 P.3d at 1080–81.

¶36 We disagreed. *Id.* at ¶ 18, 272 P.3d at 1081. True enough, as the district court here rightly noted in its order, our decision in *Wilburn* discussed the purpose of the proffered testimony. *See id.* at ¶¶ 20–21, 272 P.3d at 1081–82 (distinguishing evidence for an insanity plea from evidence that doesn't meet the insanity threshold when it is "*offered to show* that the defendant had a mistaken belief of fact that negates the existence of a culpable mental state" (emphasis added)). And the defendant certainly argued that his *purpose* wasn't to show that he was incapable of forming the requisite culpable mental state, but to show that he hadn't "knowingly" missed his court date. *Id.* at ¶ 13, 272 P.3d at 1081. But that wasn't the basis of our decision. Instead, we emphasized that section 16-8-107(3)(b) allows the admission of evidence of a mental condition that doesn't constitute a "mental disease or defect" necessitating an NGRI plea. *Id.* at ¶¶ 22–27, 272 P.3d at 1082–83.

15

¶37 Likewise, in *People v. Vanrees*, 125 P.3d 403, 404 (Colo. 2005), we focused on the mental condition at issue when we considered whether "mental slowness" implicated the legal definition of insanity. In concluding that it did not, we noted that "there [was] nothing within Colorado's statutory insanity framework indicating that our General Assembly intended to create an 'all or nothing' insanity defense that applies in all cases where the defendant presents evidence challenging the culpable mental state element of the crime charged." *Id.* at 408.

¶38 In both instances, we interpreted section 16-8-107(3) as requiring trial courts to determine whether testimony regarding a mental condition meets the definition of insanity; we did not instruct trial courts to yield to a defendant's stated purpose in seeking admission of the evidence. *See also People v. Requejo*, 919 P.2d 874, 877 (Colo. App. 1996) (concluding that "mental slowness" didn't meet the definition of "mental disease or defect" because it wasn't "severely abnormal" and didn't "grossly and demonstrably impair [the] 'perception' of reality").

¶39 Moore, however, argues that our decisions in *Rosas* and *People v. Flippo*, 159 P.3d 100 (Colo. 2007), and the court of appeals' decision in *People v. Lane*, 2014 COA 48, 343 P.3d 1019, on which the district court relied, require that the court consider the purpose of the evidence. We disagree.

¶40 *Rosas* was an insanity case, pure and simple. The defendant in *Rosas* was trying to admit evidence of his bipolar disorder to show that he was acutely manic

and suffered from delusions at the time of the offense so that he was incapable of forming the requisite culpable mental state. ¶¶ 2, 6, 459 P.3d at 542–43. He did not, however, plead NGRI and, instead, sought to admit this evidence under the abolished affirmative defense of impaired mental condition. *Id.* at ¶¶ 4–7, 459 P.3d at 542–43. Although we began our analysis by "assess[ing] the nature of the evidence Rosas wishe[d] to present," *id.* at ¶ 22, 459 P.3d at 545, we concluded that the evidence was "clearly relevant to the issue of insanity" because it was "evidence of a mental disease or defect that rendered the defendant *incapable* of forming the requisite culpable mental state at the time of the offense," *id.* at ¶¶ 23–24, 459 P.3d at 546. Rosas's mental condition evidence therefore unequivocally implicated the definition of insanity.

¶41    While *Rosas* clearly was an insanity case, *Flippo* clearly was not. In fact, it didn't concern insanity at all. The defendant in *Flippo* sought to introduce evidence of his "intellectual disability" to challenge the voluntariness of a videotaped confession, but he failed to comply with the notice requirement of section 16-8-107(3)(b). 159 P.3d at 102–03. Here too, we referred to the purpose for which the defendant offered mental condition evidence. *See id.* at 104 (stating that section 16-8-107(3)(b) applies in situations "where insanity is *not the reason the evidence is being introduced*" (emphasis added)). But we dealt solely with interpreting "mental condition" under section 16-8-107(3)(b) and didn't address

17

when an insanity plea is required under section 16-8-107(3)(a). *Flippo*, therefore, doesn't undercut our conclusion.

¶42 Moore's reliance on *Lane* is similarly unavailing. In *Lane*, the defendant claimed that he woke up in the middle of the night to find the victim groping him, so he stabbed the victim to death. ¶ 3, 343 P.3d at 1022. The defendant argued that he acted in self-defense against a sexual assault and sought to admit lay testimony about physical and sexual abuse he experienced as a young child. *Id.* at ¶¶ 3, 29, 343 P.3d at 1022, 1025. He also sought to admit expert testimony to educate the jury about PTSD generally, without having the expert examine him or testify that he in fact suffered from PTSD, but he did so without complying with the notice requirements of section 16-8-107(3)(b) or undergoing a court-ordered examination pursuant to section 16-8-106. *Id.* at ¶¶ 24–25, 343 P.3d at 1025. In concluding that the trial court's exclusion of the proffered expert testimony was proper, the division held that the evidence involved the defendant's mental condition; therefore, the defendant had to comply with the statutory notice and mental examination requirements before offering the expert testimony at trial. *Id.* at ¶¶ 26–28, 343 P.3d at 1025.

¶43 In its order, the district court concluded that *Lane*, in effect, stood for the proposition that defendants who comply with the statutory notice and mental examination requirements may offer expert testimony regarding their mental

18

condition when it explains their subjective need for self-defense, without pleading insanity. But unlike the case before us now, the parties in *Lane* didn't argue that the defendant had a mental condition that implicated the definition of insanity under section 16-8-101.5(1). Whether the defendant in *Lane* should have pled NGRI was not at issue. Thus, it is inapposite.

¶44 To recap, in determining whether evidence is "relevant to the issue of insanity" under section 16-8-107(3)(a), the trial court should determine whether the proposed testimony, in whole or in part, is *probative* of what the legislature has defined as insanity. That is, whether any of the proposed testimony tends to prove that the defendant (a) was so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong, or (b) suffered from a condition of mind caused by mental disease or defect that prevented the defendant from forming a culpable mental state that is an essential element of a crime charged. *See* § 16-8-101.5. To implicate the definition of mental disease or defect, the defendant's mental condition must be "severely abnormal" so that it "grossly and demonstrably impair[s] [the defendant's] perception or understanding of reality." § 16-8-101.5(2)(c). Evidence that tends to prove insanity is inadmissible, absent an NGRI plea, regardless of the defendant's ostensible purpose in offering it, while evidence that doesn't tend to prove insanity may be

19

admitted to support a defendant's self-defense claim so long as such evidence otherwise conforms to the statutory requirements and the rules of evidence.[5]

¶45 In the interest of making this scheme clearer, let's discuss the possible permutations. If the court finds that *none* of the proposed testimony tends to prove insanity, the defendant may introduce it at trial without pleading NGRI (again, so long as it otherwise satisfies any applicable statutory requirements and rules of evidence, including, for example, CRE 401 to 403 and CRE 702). If, however, the court finds that *all* the proposed testimony tends to prove insanity, the defendant may introduce it only by pleading NGRI. But if the court finds that *some* of the proposed testimony tends to prove insanity and some doesn't, the defendant must make a choice: (1) plead NGRI and seek to introduce all of the proposed testimony; or (2) withdraw the notice of intent to introduce mental condition evidence as to the portions that tend to prove insanity. Selecting the latter course means

---

[5] In serving as the evidentiary gatekeeper in this context, the trial court is vested with broad discretion. The court's pretrial ruling on the admission of mental condition evidence under this statutory test would typically be an evidentiary ruling that's reviewed for abuse of discretion on appeal. *See Venalonzo*, ¶ 15, 388 P.3d at 873.

embracing the court's redactions and abiding by them at trial (while, of course, retaining the ability to object for the purpose of preserving issues for appeal).

¶46 Contrary to Moore's assertion, limiting the admission of mental condition evidence in this manner doesn't violate his due process rights because he has the option to plead NGRI and admit the evidence. *See Flippo*, 159 P.3d at 106 ("Although a defendant is entitled to present evidence in his or her defense, the manner in which the evidence is presented may be controlled by statute."); *People v. Roadcap*, 78 P.3d 1108, 1112 (Colo. App. 2003) (concluding that the trial court's exclusion of expert testimony regarding the defendant's mental condition, where the defendant didn't comply with the statutory notice requirement, didn't preclude this line of defense but only required him to comply with the statute if he chose to pursue it); *cf. Hendershott v. People*, 653 P.2d 385, 392–97 (Colo. 1982) (concluding that a statute that restricted the admission of mental condition evidence to specific intent crimes violated the defendant's due process rights because it eliminated *any meaningful opportunity* for him to contest the mens rea of the crime rather than merely limiting an affirmative defense to a certain category of offenses).

¶47 Moreover, we are not persuaded to take a different approach by the prosecution's argument that admitting mental condition evidence in this fashion contravenes public policy because it might enable defendants like Moore to avoid

confinement in a mental health facility. *See* § 16-8-105.5(4), C.R.S. (2020) (providing that defendants who are found not guilty by reason of insanity are to be committed to the custody of the Department of Human Services until they are found eligible for release). First, the unambiguous language of the insanity statutes controls. Therefore, the prosecution's policy argument would be better directed at the legislature. Second, the prosecution's argument fails on its own terms. For Moore to be acquitted, a jury must find that Moore had a *reasonable* ground to believe that he was in imminent danger of being killed or of receiving great bodily injury and that Moore *reasonably* believed less force would have been inadequate. *See* § 18-1-704(2)(a), C.R.S. (2020) (defining the justifiable use of deadly physical force). In other words, Moore's subjective impression alone doesn't control the viability of his self-defense claim. So, this hardly seems like a recipe for chaos.

¶48 We are equally unpersuaded by the prosecution's argument that Moore's proposed use of mental condition evidence is a non-starter because self-defense focuses on the reasonableness of a defendant's belief, and Moore's proffered evidence would necessarily render his subjective belief objectively unreasonable. To be sure, the proffered evidence must be relevant, but the self-defense statute explicitly implicates a defendant's subjective belief in the need for self-defense for consideration by the jury. *See id.* (providing that the use of deadly force is justified

22

only where the defendant has "reasonable ground to believe, *and does believe*, that he or another person is in imminent danger of being killed or of receiving great bodily injury" (emphasis added)). Yet, irrespective of that subjective belief, whether Moore acted reasonably remains a question of fact for the jury to resolve. *See People v. Jones*, 675 P.2d 9, 14 (Colo. 1984) (stating that the reasonableness of the accused's belief in the necessity of defensive action is determined by the trier of fact).

## D. Application

¶49 The prosecution essentially argues that testimony related to both expert reports is inadmissible because the reports include references to Moore having bipolar disorder, which the prosecution contends is a "severely abnormal mental condition" that is "relevant to the issue of insanity." We disagree.

¶50 Moore's bipolar disorder diagnosis alone doesn't render testimony related to the reports wholly inadmissible. As we discussed above, insanity requires more than just a showing that the defendant's mental condition was "severely abnormal"—the condition must also grossly and demonstrably impair the defendant's perception or understanding of reality. A bipolar disorder diagnosis doesn't necessarily meet that threshold. For example, the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders notes that bipolar disorder I, with which Dr. Wells diagnosed Moore, doesn't require a presentation of

23

psychosis. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013).

¶51 Here, Dr. Brar's report concludes that, although "Moore's trauma-related disorder and intoxication" likely affected his decision-making at the time of the incident, he "*did not* suffer from a severe, abnormal mental condition which grossly and demonstrably impaired his perception or understanding of reality," and he "*was not* so diseased or defective in mind . . . as to be incapable of distinguishing right from wrong with respect to the alleged acts or to be prevented from forming the culpable mental states." The district court must therefore consider whether there are any statements in Dr. Brar's report that are probative of insanity, and if there aren't, it may choose to allow the admission of the report in its entirety.

¶52 Dr. Wells's report, however, requires a deeper analysis. For example, the report states that "Moore's thinking (even when not in a stressful situation) tends to be distorted with psychotic qualities"; that his "elevated mood" at the time of the incident "may have led him to feel grandiose"; that he "evinces signs of delusional thinking"; and that his "ability to perceive reality accurately" was "extraordinarily poor," resulting in "distorted conclusions and impaired judgment." These statements, and other similar statements discussing Moore's "psychotic" thinking and impaired perception of reality, may be probative of

24

insanity. On the other hand, the court may find that Dr. Wells's statement that "[t]rauma symptoms also contributed to [Moore's] paranoid ideation, hyper-vigilance, agitation[,] and his feelings of vulnerability," and other such statements not suggesting psychosis or an impaired perception of reality, are admissible.

### III. Conclusion

¶53 We vacate the district court's order allowing the blanket admission of evidence of Moore's mental condition and remand the case for further proceedings consistent with our opinion.