1
 2026 CO 16 The People of the State of Colorado, Petitioner v. Maria Laida Day, Respondent No. 24SC16Supreme Court of Colorado, En BancMarch 16, 20262
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 20CA1717.
 
 
          
 Attorneys for Petitioner: Philip J. Weiser, Attorney General
 Frank R. Lawson, Senior Assistant Attorney General Denver,
 Colorado.
 
 
          
 Attorneys for Respondent: Megan A. Ring, Public Defender
 Andrew C. Heher, Deputy Public Defender Denver, Colorado.
 
 3
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined. CHIEF JUSTICE MARQUEZ, joined by JUSTICE BOATRIGHT
 and JUSTICE BLANCO dissented.
 
 4
 
          
 OPINION
 
 
           HOOD,
 JUSTICE.
 
 
          ¶1
 Maria Laida Day hit her boyfriend with her car, causing his
 death. She claimed it was nothing more than a tragic
 accident. The prosecution disagreed. Based in part on her
 behavior immediately after the incident, they charged Day
 with second degree murder and other offenses. Day's
 mental condition at the time of the killing thus became a
 crucial issue at trial.
 
 
          ¶2
 Although Day never alleged that she was not guilty by reason
 of insanity ("NGRI"), she still sought to introduce
 expert testimony that alluded to her previously diagnosed
 mental illness. More specifically, she hoped to show in part
 that her failure to take certain prescribed anti-psychotic
 medication in the days leading up to the killing could have
 affected whether she had acted knowingly, the requisite
 culpable mental state for second degree murder.
 
 
          ¶3
 Section 16-8-107(3)(b), C.R.S. (2025), allows a defendant to
 offer such evidence, even in the absence of a NGRI plea, but
 only if she first notifies the prosecution and submits to a
 state-sponsored, mental-condition examination. Day provided
 notice under section 16-8-107(3)(b), but a mental-condition
 examination never occurred.
 
 
          ¶4
 The trial court cited Day's lack of cooperation with the
 evaluator as the reason no examination occurred, but Day was
 incompetent to proceed at the time she failed to cooperate.
 Even so, the trial court refused to permit Day's
 psychiatric
 
 5
 
 expert to testify at trial about her mental condition at the
 time of the offense. A jury convicted Day as charged.
 
 
          ¶5
 A division of the court of appeals reversed and remanded the
 case for a new trial on all counts for which culpability was
 at issue. People v. Day, 2023 COA 115, ¶ 1, 544
 P.3d 1242, 1244-45.
 
 
          ¶6
 We now affirm the judgment of the court of appeals, albeit on
 slightly different grounds. We hold that a defendant must be
 competent before undergoing a mental-condition examination
 under section 16-8-107(3)(b).
 
 
          I.
 Facts and Procedural History
 
 
          ¶7
 In July 2015, Day hit her boyfriend with her car, as she
 pulled away after dropping him off in front of a business in
 Leadville. Evidence suggested he hit his head on a concrete
 barrier during the collision. She drove off. He later died at
 a hospital from the resulting injuries. When police officers
 contacted Day after she turned herself in, they reported that
 she appeared calm, nonchalant, and possibly under the
 influence of drugs or alcohol. The prosecution charged Day
 with second degree murder, leaving the scene of an accident,
 vehicular homicide, and two crime-of-violence sentence
 enhancers.
 
 
          ¶8
 Day decided to forgo a plea of NGRI, but she filed a notice
 of intent to introduce expert testimony of her mental
 condition on the day of the incident pursuant to section
 16-8-107(3)(b). In November 2015, Dr. Karen Fukutaki
 
 6
 
 conducted a sanity evaluation of Day at the Summit County
 jail. In her report, Dr. Fukutaki said that "Day's
 denial that she has ever experienced psychotic symptoms is in
 marked contrast to the overt psychotic symptoms she
 reportedly has exhibited in jail and at [the Colorado Mental
 Health Hospital in Pueblo ('CMHHIP')]," and
 "raises significant questions as to whether her account
 of her mental state on the day of the accident is
 accurate," in part because Day seemingly has "no
 insight into her mental illness or the reason she has been
 prescribed [medication]." Dr. Fukutaki opined that
 Day's failure to take her prescribed antipsychotic
 medication during the two days before the incident may have
 caused some thought disorganization that impaired her
 judgment and problem-solving abilities:
 
 
 [Day] might have been experiencing some difficulty in her
 perception of reality that might have impacted her ability to
 recognize the severity of the situation and [the
 victim's] need for immediate medical attention. Thought
 disorganization, impairment in problem-solving ability, and
 anxiety might have accounted for her having left the scene
 and having delayed contacting the police. It might also have
 accounted for her appearing to be under the influence to the
 police.
 
 
          ¶9
 After Day filed her notice to introduce expert
 mental-condition evidence, the court ordered an inpatient
 examination with CMHHIP. Attempts to complete a
 mental-condition examination spanned several years. The
 following timeline reflects key events along the way.
 
 7
 
 • January 2016: Defense counsel filed a notice of intent
 to introduce expert testimony of Day's mental condition
 on the day of the incident pursuant to section
 16-8-107(2)(b).[1]
 
 
 • February 2016: The court ordered Day to undergo a
 mental-condition examination. CMHHIP was ordered to complete
 its report by April 29, 2016.
 
 
 • May 2016: CMHHIP notified the court that, due to
 resource constraints, Day hadn't been evaluated, and it
 requested an extension of time to complete the examination.
 
 
 • July 2016: CMHHIP once again requested an extension of
 time to complete the evaluation.
 
 
 • September 2016: CMHHIP informed the court that it
 wasn't equipped to videotape the mental-condition
 examination. The court rescinded a prior order that the
 mental-condition examination be recorded.
 
 
 • October 2016: Day was admitted to CMHHIP to be
 evaluated. CMHHIP terminated the examination process because
 it didn't have videorecording capabilities. Additionally,
 the examiner believed that the prosecution had failed to
 provide him with all the discovery materials he needed. (In a
 subsequent motion, the prosecution asserted that they had
 provided CMHHIP with all the materials the prosecution then
 had.) The examiner felt he couldn't proceed until he
 reviewed additional information. The court again issued an
 order directing CMHHIP to evaluate Day without video
 recording the examination.
 
 
 • December 21, 2016: CMHHIP reported that Day twice
 refused to complete the examination. Day refused because she
 was under the impression that the CMHHIP evaluator was
 conducting a NGRI evaluation and she wasn't pleading
 NGRI. Defense counsel contacted
 
 8
 
 CMHHIP to alleviate confusion between Day and CMHHIP
 regarding the purpose of the examination.
 
 
 • December 28, 2016: The prosecution moved to preclude
 Day's assertion of a "[m]ental [d]efect
 [d]efense" because Day hadn't cooperated with CMHHIP
 to complete the mental-condition examination.
 
 
 • February 9, 2017: Before the court ruled on the
 prosecution's motion to exclude mental-condition
 evidence, CMHHIP re-attempted to evaluate Day. The examiner
 asked Day, "What plea do you intend to enter?" She
 replied, "Not guilty." When the examiner explained
 the elements of a not guilty plea and that Day was there for
 a mental-condition examination for a NGRI plea, Day exclaimed
 that she wasn't there for that. The examiner reported
 that he "terminated the examination due to ethical
 concerns" and stated his only experience with
 mental-condition examinations involved NGRI pleas.
 
 
 • February 10, 2017: Defense counsel asked the court to
 issue an order clarifying that the examination was for
 introducing mental-condition evidence not an insanity
 defense. Day asserted that CMHHIP's misunderstanding of
 the court-ordered examination contributed to her confusion
 and alleged uncooperativeness.
 
 
 • February 24, 2017: The court ordered an evaluation
 pursuant to section 16-8-107(2)(b), a subsection that
 doesn't exist but which defense counsel had mistakenly
 cited in the notice; presumably, the court meant to invoke
 section 16-8-107(3)(b).
 
 
 • March 2017: The court vacated the February 24 order
 and issued a new order for an evaluation pursuant to section
 16-8-107(3)(b). The court also ordered a competency
 evaluation as authorized by section 16-8.5-105, C.R.S.
 (2025).
 
 
 • April 2017: Despite the pending court orders, Day was
 transferred back to the county jail without completing the
 evaluations.
 
 
 • July 2017: Defense counsel moved for a competency
 evaluation because Day seemed to be decompensating in jail
 while awaiting evaluation at CMHHIP.
 
 9
 
 • August 2017: The court again ordered CMHHIP to obtain
 custody of Day and complete a competency evaluation.
 
 
 • September 2017: CMHHIP notified the court that Day
 hadn't been admitted yet and requested an extension of
 time to file its report due to resource constraints.
 
 
 • November 2017: CMHHIP conducted a competency
 evaluation and found Day competent to proceed. CMHHIP
 didn't conduct a mentalcondition examination.
 
 
 • December 2017: The court again ordered CMHHIP to
 conduct a mentalcondition examination.
 
 
 • January 2018: CMHHIP notified the court that it
 expected to submit its report on or before April 30, 2018.
 
 
 • March 2018: Defense counsel again moved to suspend
 proceedings due to Day's incompetence, arguing Day's
 mental health had worsened while in jail.
 
 
 • April 2018: The court again ordered CMHHIP to conduct
 both a competency and a mental-condition evaluation. This was
 at least the fourth order for a mental-condition examination.
 
 
 • June 2018: CMHHIP conducted a competency evaluation of
 Day and found she met the criteria for a form of
 schizophrenia and was incompetent to proceed to trial. The
 examiner observed Day seeming to respond to internal stimuli
 and noted that Day questioned the validity of the court
 order. The evaluator also indicated that he couldn't
 complete the mental-condition examination because Day
 wasn't cooperative. The court issued an order finding Day
 incompetent to proceed, and the prosecution and defense
 counsel agreed that Day should be committed to CMHHIP for
 inpatient restoration-to-competency treatment.
 
 
 • August 2018: CMHHIP admitted Day for restoration
 treatment. • October 2018 and December 2018: CMHHIP
 re-evaluated Day and found her incompetent to proceed.
 
 10
 
 • March 2019: CMHHIP re-evaluated Day and found her
 competent to proceed. CMHHIP didn't conduct a
 mental-condition examination.
 
 
 • May 2019: At defense counsel's request, and as
 permitted by section 16-8.5-103(3), C.R.S. (2025), a
 third-party psychologist conducted another competency
 evaluation. The psychologist confirmed that Day was competent
 to proceed. The court agreed that Day had been restored to
 competency and set the trial for August 2019.
 
 
          ¶10
 In the four-year period between defense counsel's notice
 of intent to introduce expert mental-condition evidence and
 the trial date, no mentalcondition examination was ever
 completed.
 
 
          ¶11
 The parties prepared for the August trial, and Day expected
 Dr. Fukutaki to testify. During voir dire, however, the court
 declared a mistrial because it couldn't seat an impartial
 jury. The court reset the trial for January 2020 in a
 different county.
 
 
          ¶12
 Leading up to the second trial, the prosecution again moved
 to exclude Dr. Fukutaki's mental-condition testimony
 under section 16-8-107(3)(a)—which prohibits admission
 of "evidence relevant to the issue of insanity"
 unless the defendant pleads NGRI—and CRE 403. The
 prosecution argued that allowing Day to present
 mental-condition evidence without pleading NGRI would allow
 her to bypass procedural requirements and consequences, such
 as submitting to a sanity examination, facing a trial on the
 issue of sanity, and being committed to a state facility
 until eligible for release if the jury finds her NGRI.
 
 11
 
          ¶13
 At a hearing on the motion in November 2019, the trial court
 found that the defense had complied with the statutory
 requirements of section 16-8-107(3)(b) and asked defense
 counsel to provide an offer of proof and a proposed limiting
 instruction so the court could make findings pursuant to the
 rules of evidence. Defense counsel did so, explaining that
 she expected Dr. Fukutaki to testify to Day's mental
 illness—a psychotic thought disorder—and that Day
 had reported not taking her prescribed anti-psychotic
 medication for the two days before the incident. Counsel
 explained that Dr. Fukutaki would also testify generally
 "about psychotic thought disorders, and their impact on
 an individual's capacity for complex thought organization
 and problem-solving cognitive functions," which was
 being offered "to explain Ms. Day's post-event
 conduct." Defense counsel's proposed limiting
 instruction explained that the evidence pertaining to
 Day's mental illness was being offered to explain the
 role that illness played in her postevent conduct, actions on
 scene, and at the hospital. The jury instruction stated that
 the affirmative defense of insanity hadn't been asserted
 and that the defense in this case was a factual defense. The
 evidence was therefore being offered, not to show that Day
 was incapable of forming the culpable mental state of
 knowingly, but to show that Day "was not in fact aware
 that her conduct was practically certain to cause the
 resulting death of [the victim]."
 
 12
 
          ¶14
 The trial court granted the prosecution's motion to
 exclude Dr. Fukutaki's testimony. The court noted that,
 to introduce evidence of a defendant's mental condition,
 the defendant must have undergone a court-ordered examination
 pursuant to section 16-8-107(3)(b), but no such examination
 had occurred here because of Day's noncooperation:
 "Accordingly, on this basis alone the Court can deny the
 introduction of the defendant's mental condition."
 
 
          ¶15
 Beyond this statutory concern, the trial court cited several
 evidentiary bases for excluding the proffered
 mental-condition evidence. First, the proposed testimony was
 based upon Day's self-report regarding her medication.
 Second, Dr. Fukutaki's assessment was too speculative, as
 indicated by her statements that Day "might not
 have appeared overtly psychotic . . . but could have
 been experiencing some thought disorganization" and
 "might have been experiencing some difficulty
 in her perception." People v. Day, No. 15CR26,
 at 4 (Dist. Ct., Lake Cnty., Dec. 18, 2019) ("December
 2019 Order") (unpublished order) (omission in original)
 (emphases added) (quoting Day's Offer of Proof Regarding
 C.R.S. 16-8-107(3)(B) Evidence, November 25, 2019). Third,
 Dr. Fukutaki's assessment, and therefore her proposed
 testimony, conveyed issues related to Day's sanity at the
 time of the offense. Fourth, even if Dr. Fukutaki's
 testimony appropriately sought to explain only Day's
 post-event conduct, the risk was too great that a jury would
 conflate evidence of Day's mental condition just after
 the alleged offense
 
 13
 
 with Day's mental condition during the alleged offense.
 The court also emphasized that Day was introducing
 mental-condition evidence related to a mental illness and
 most cases regarding mental-condition evidence involved an
 intellectual disability, not a mental illness. So, the court
 found that the proffered testimony was "an attempt [to]
 present an insanity defense without entering a not guilty
 plea by reason of insanity." Id.
 
 
          ¶16
 The case proceeded to trial on January 27, 2020, and the jury
 found Day guilty as charged. The court sentenced Day to
 thirty-five years in the custody of the Department of
 Corrections.
 
 
          ¶17
 Day appealed her conviction, challenging the trial
 court's refusal to admit her expert mental-condition
 evidence. A division of the court of appeals concluded that
 the trial court had abused its discretion in two ways by
 excluding Day's proffered expert mental-condition
 evidence. Day, ¶ 24, 544 P.3d at 1248. First,
 the division concluded the trial court had erred as a matter
 of law by "fault[ing] Day for failing to
 'cooperate' with a mental condition examination
 conducted while she was incompetent." Id.
 
 
          ¶18
 Second, the division concluded that the trial court had
 misapplied People v. Moore, 2021 CO 26, 485 P.3d
 1088, "by failing to parse the proffered evidence to
 'distinguish what is probative of insanity under this
 exacting definition from what is not.'"
 Day, ¶ 26, 544 P.3d at 1248 (quoting
 Moore, ¶ 5, 485 P.3d at 1093). The
 
 14
 
 division ultimately concluded "that the only piece of
 testimony that was probative of insanity, and thus
 inadmissible, was the testimony regarding Day's ability
 to perceive reality or the severity of the situation.
 Everything else fell short of being probative of insanity and
 was thus admissible." Id. at ¶ 35, 544
 P.3d at 1250. In reaching this conclusion, the division also
 rejected the prosecution's argument that the evidence was
 inadmissible under CRE 403, explaining that the admissibility
 of mental-condition evidence is measured by its
 "relatedness to insanity, not its proposed
 purpose." Id. at ¶ 36, 544 P.3d at 1250.
 However, the division didn't determine whether the
 evidence was inadmissible under CRE 403 because it reasoned
 that "any prejudice resulting from the lack of a CMHHIP
 evaluation can be remedied on remand by the trial court's
 reordering of the proper examination before the testimony is
 presented on retrial." Id. Finally, the
 division noted that there are several cases that apply
 mental-condition evidence more broadly than just situations
 involving intellectual disabilities. Id. at ¶
 29, 544 P.3d at 1249. The division reversed and remanded the
 case for a new trial on all counts for which Day's
 culpability was at issue. Id. at ¶ 41, 544 P.3d
 at 1251.
 
 
          ¶19
 The prosecution petitioned for certiorari, and we granted
 their petition.[2]
 
 15
 
          II.
 Analysis
 
 
          ¶20
 We begin by identifying the controlling standards of review
 and relevant principles of statutory interpretation. Next, we
 discuss the statutory requirements for admitting expert
 testimony about a defendant's mental condition and
 differentiate mental condition at the time of an alleged
 offense from competency to stand trial. Then, we apply the
 facts of this case and examine how competency and
 noncooperation affected Day's ability to introduce expert
 mental-condition testimony. Finally, we discuss the
 evidentiary basis for admitting mentalcondition evidence
 under Moore and CRE 403.
 
 
          A.
 Standard of Review
 
 
          ¶21
 We review a trial court's evidentiary ruling for an abuse
 of discretion. Moore, ¶ 26, 485 P.3d at 1095.
 "A trial court abuses its discretion when its decision
 is 'manifestly arbitrary, unreasonable, or unfair,'
 or based on a misapplication of the law." People v.
 West, 2025 CO 61, ¶ 13, 578 P.3d 832, 835 (quoting
 People v. Kent, 2020 CO 85, ¶ 28, 476 P.3d 762,
 768).
 
 
          ¶22
 Here, because Day preserved the alleged error and because the
 trial court's exclusion of the evidence implicates
 Day's ability to present a complete defense,
 
 16
 
 we will reverse unless the error was harmless beyond a
 reasonable doubt. Hagos v. People, 2012 CO 63,
 ¶ 11, 288 P.3d 116, 119; People v. Johnson,
 2021 CO 35, ¶ 17, 486 P.3d 1154, 1158 (stating that
 interference with a defendant's ability to present a
 complete defense is a constitutional error that requires
 reversal if there is a reasonable possibility that the error
 might have contributed to the conviction).
 
 
          ¶23
 Determining whether the trial court erred requires us to
 interpret the relevant statutes, and we review issues of
 statutory interpretation de novo. Moore, ¶ 25,
 485 P.3d at 1095. When interpreting statutes, our primary
 task is to ascertain and give effect to the legislature's
 intent. People v. Griego, 2018 CO 5, ¶ 25, 409
 P.3d 338, 342. We begin with the statute's plain
 language, giving words and phrases their common and ordinary
 meanings. Id. If the statutory language is
 unambiguous, we apply it as written. Id.
 
 
          B.
 Mental Condition and Competency
 
 
          ¶24
 Generally, defendants are prohibited from introducing
 evidence of insanity unless they enter a NGRI plea. §
 16-8-107(3)(a). But, regardless of whether the defendant
 pleads NGRI, "evidence in the nature of expert opinion
 concerning the defendant's mental condition" may be
 admissible as long as it's not probative of insanity and
 certain conditions are met: the defendant must first give
 notice to the court and the prosecution of her intent to
 introduce the evidence, and the defendant must undergo a
 court-ordered examination pursuant to section
 
 17
 
 16-8-106, C.R.S. (2025). § 16-8-107(3)(b). A
 defendant's proposed mental-condition evidence tends to
 be probative of insanity if it implicates the definition of
 mental disease or defect. Moore, ¶ 44, 485 P.3d
 at 1098. Mental diseases or defects are defined as
 "severely abnormal mental conditions that grossly and
 demonstrably impair a person's perception or
 understanding of reality and that are not attributable to the
 voluntary ingestion of alcohol or any other psychoactive
 substance." § 16-8-102(7), C.R.S. (2025).
 
 
          ¶25
 Defendants are required to cooperate with personnel during
 court-ordered examinations. § 16-8-106(2)(c). If a
 defendant doesn't cooperate, she may not introduce expert
 testimony regarding her mental condition at trial.
 Id. A defendant may still, however, introduce other
 mental-condition evidence, but the fact of her noncooperation
 during the examination may be admissible to rebut any such
 evidence. Id.
 
 
          ¶26
 Cooperation isn't defined by statute. The word
 "cooperate" generally means "to act or work
 with another" or to "act together or in
 compliance." Cooperate, Merriam-Webster
 Dictionary, https://www.merriam-webster.com/
 dictionary/cooperate [https://perma.cc/86F9-VFYG]. Applying
 this ordinary meaning, we conclude that "cooperate"
 in section 16-8-106(2)(c) means that the defendant must work
 with the evaluator and comply with the court order to
 complete the examination.
 
 18
 
          ¶27
 The hiccup in this case is that, at the time Day was
 evaluated and deemed uncooperative, she was incompetent. For
 that reason, we must determine if the court may even order a
 mental-condition examination of an incompetent defendant, let
 alone fault her for noncooperation if it does.
 
 
          ¶28
 A defendant is incompetent to proceed if, as a result of a
 mental or developmental disability, the defendant lacks
 "sufficient present ability to consult with the
 defendant's lawyer with a reasonable degree of rational
 understanding in order to assist in the defense, or . . .
 [if] the defendant does not have a rational and factual
 understanding of the criminal proceedings." §
 16-8.5-101(12), C.R.S. (2025). When the issue of competency
 is raised, if the court has insufficient information to make
 a preliminary finding or if a party objects to the
 court's preliminary finding, the court must order the
 Department of Human Services to evaluate the defendant and
 prepare a report. § 16-8.5-103(2). The statute requires
 the defendant to cooperate with the competency evaluator and,
 if she doesn't, the statute explains that the
 defendant's noncooperation may be used as evidence
 against her at a competency or restoration hearing to
 "rebut any evidence introduced by the defendant with
 regard to the defendant's competency." §
 16-8.5-105(2). However, if the lack of cooperation is the
 result of a developmental or mental disability, then the fact
 of noncooperation can't be introduced at those hearings.
 Id.
 
 19
 
          ¶29
 If there is reason to believe that a defendant is incompetent
 to proceed, the trial court must suspend the proceedings
 until the competency of the defendant has been determined.
 People v. Zapotocky, 869 P.2d 1234, 1237 (Colo.
 1994). The prohibition against prosecuting an incompetent
 defendant "attaches at the commencement of formal
 criminal proceedings and continues throughout the execution
 and satisfaction of the sentence." Jones v. Dist.
 Ct., 617 P.2d 803, 807 (Colo. 1980). So, while a
 defendant is incompetent, a court may only proceed with
 matters that are "susceptible of fair determination
 prior to trial and without the personal participation of the
 defendant." § 16-8.5-102(1), C.R.S. (2025).
 
 
          ¶30
 Here, the trial court's order excluding the proffered
 expert mental-condition testimony implicitly determined that
 Day's competency was irrelevant to her noncooperation.
 The division disagreed, concluding that Day couldn't be
 faulted for her noncooperation while she was incompetent.
 Day, ¶¶ 24-25, 544 P.3d at 1248.
 
 
          ¶31
 We resolve that disagreement now.
 
 
          C.
 Application1. Competency Examination
 
 
          ¶32
 The trial court, in its order granting the prosecution's
 motion to exclude expert mental-condition evidence, noted
 that Day didn't cooperate with the CMHHIP examiner. The
 court referred to the June 2018 report, in which CMHHIP
 
 20
 
 found Day incompetent and reported that the state hospital
 couldn't complete the mental-condition examination
 because Day was not cooperative.
 
 
          ¶33
 On appeal, the division concluded that the trial court had
 erred by faulting Day for failing to cooperate during the
 June evaluation. Id. at ¶ 25, 544 P.3d at 1248.
 The division reached this conclusion based on section
 16-8.5-105(2), which prohibits the use of a defendant's
 noncooperation in competency evaluations at subsequent
 hearings if the noncooperation was the result of "a
 mental disability." Because Day's noncooperation was
 during a competency evaluation and she has a previously
 diagnosed mental illness, the division concluded that the
 trial court shouldn't have faulted her for her
 noncooperation when determining the admissibility of the
 expert mental-condition testimony. Day, ¶ 25,
 544 P.3d at 1248.
 
 
          ¶34
 Although we agree with the division that Day shouldn't be
 faulted for noncooperation while incompetent, we do so for
 different reasons. Section 16-8.5-105(2) applies only to the
 admissibility of a defendant's noncooperation at
 subsequent competency and restoration hearings, not all
 subsequent hearings in a defendant's case. Therefore,
 section 16-8.5-105(2) simply doesn't govern whether
 Day's noncooperation during a competency evaluation may
 be considered by the trial court when determining the
 admissibility of expert mental-condition testimony at trial.
 
 21
 
          ¶35
 Still, as discussed above, one aspect of incompetence is a
 defendant's inability to rationally understand the
 proceedings or assist in her defense because of a mental
 disability. § 16-8.5-101(12). For this reason, when a
 defendant is deemed incompetent, the court shouldn't
 proceed with matters that require the defendant's
 personal participation for a fair determination of the issue.
 § 16-8.5-102(1). A mental-condition examination requires
 a defendant's personal participation. And if a defendant
 can't meaningfully participate in her defense, she likely
 can't meaningfully participate in such an examination
 either. An incompetent defendant who is struggling to
 understand the purpose of the mental-condition examination
 can't be expected to fulfill the purpose of the
 examination. Because cooperating with a mental-condition
 examination is a key step in a defendant's ability to
 present expert mental-condition evidence as part of her
 defense, the examination shouldn't proceed until the
 defendant is competent to proceed. See Zapotocky,
 869 P.2d at 1237.
 
 
          ¶36
 Here, after CMHHIP exhibited confusion about the type of
 examination that had been ordered, the court entered its
 March 2017 order, which reiterated that CMHHIP should conduct
 a mental-condition examination, not a sanity examination.
 After that clarification, CMHHIP only attempted to conduct a
 mental-condition examination at times when Day was deemed
 incompetent. But she couldn't reasonably participate in a
 mental-condition examination during that
 
 22
 
 time, so her lack of cooperation in any such examination
 shouldn't be used against her to exclude expert
 mental-condition evidence. Her incompetence rendered any
 mental-condition examination, and her cooperation (or lack
 thereof) with such an examination, a nullity.
 
 
          ¶37
 Day requested, and the court ordered, a mental-condition
 examination multiple times before trial, but CMHHIP failed to
 conduct the examination while Day was competent. When the
 prosecution moved to exclude Dr. Fukutaki's
 mental-condition testimony, the court's April 2018 order
 for a mental-condition examination remained in place. Day
 relied on CMHHIP to follow the order and complete the
 examination. Before the trial court excluded Day's expert
 mentalcondition evidence, it should have enforced its order
 by directing CMHHIP to examine Day while she was competent.
 (At this juncture, the court hardly needed any reminders
 about defense counsel's continuing desire for the
 examination. The issue had been front and center literally
 for years, and the court recognized the need for the
 examination in its written ruling.) Instead, the trial court
 granted the prosecution's motion in limine. It did so, at
 least in part, because of the defendant's lack of
 cooperation in completing the mental-condition examination in
 June 2018 (while incompetent), stating that "on that
 basis alone" it could exclude all mental-condition
 evidence. December 2019 Order, at 2. We agree with the
 division that, in doing so, the trial court abused its
 discretion.
 
 23
 
          2.
 Admissibility of Mental-Condition Evidence Under
 Moore and CRE 403
 
 
          ¶38
 While Day's case was on appeal, we announced our decision
 in Moore, which provided guidance on how to evaluate
 the admissibility of mentalcondition evidence without a NGRI
 plea. In Moore, we concluded that "the trial
 court should determine whether the proposed testimony, in
 whole or in part, is probative of what the
 legislature has defined as insanity," and if it's
 probative of insanity, it's inadmissible. ¶ 44, 485
 P.3d at 1098.
 
 
          ¶39
 Applying this framework, the division concluded that only one
 part of the proffered expert mental-condition
 testimony—that Day's mental condition could've
 prevented her from accurately perceiving reality or
 recognizing the severity of the situation—was probative
 of insanity and thus inadmissible under section
 16-8-107(3)(b). Day, ¶¶ 25, 34, 544 P.3d
 at 1248, 1250. The division concluded that the remaining
 proffered evidence—Day's mental condition, the
 medication she was prescribed but not taking, and that she
 might have been experiencing some thought
 disorganization—wasn't "suggestive of the type
 of mental disease or defect contemplated in the insanity
 statute." Id. at ¶ 33, 544 P.3d at 1250.
 
 
          ¶40
 We agree with the division that the trial court's ruling
 swept too broadly when it rejected all of Dr. Fukutaki's
 testimony because, in doing so, the trial court failed
 "to distinguish what is probative of insanity under [the
 statute's] exacting
 
 24
 
 definition from what is not." Moore, ¶ 5,
 485 P.3d at 1093; see also People v. Ray, 2025 CO
 42M, ¶ 28, 575 P.3d 400, 419 ("While we can't
 fault the trial court for failing to foresee this
 development, 'we generally apply the law in effect at the
 time of appeal.'" (quoting People v. Owens,
 2024 CO 10, ¶ 112, 544 P.3d 1202, 1228)).
 
 
          ¶41
 The division also said it was unpersuaded by the
 prosecution's CRE 403 argument that the probative value
 of Day's expert mental-condition evidence was
 substantially outweighed by the risk of unfair prejudice.
 Day, ¶ 36, 544 P.3d at 1250. The division
 observed that it was "bound by Moore's
 guidance, which measures admissibility of mental condition
 evidence by its relatedness to insanity, not its proposed
 purpose." Id. But this statement seemingly
 conflated the statutory analysis with the evidentiary
 analysis.
 
 
          ¶42
 In Moore, we explained that section
 16-8-107(3)(a)'s preclusion of "evidence that is
 'relevant to the issue of insanity,'" absent a
 NGRI plea, means that a defendant may not introduce
 mental-condition evidence "that tends to prove or
 disprove the issue of insanity—that is, evidence that
 is probative of what is [statutorily] defined as
 insanity." Moore, ¶ 33, 485 P.3d at 1096
 (quoting § 16-8-107(3)(a)); see also CRE 401
 (defining evidentiary relevance). However, "evidence
 that doesn't tend to prove insanity may be admitted [to
 support other defenses] so long as such evidence otherwise
 conforms to the statutory requirements and the rules of
 evidence." Moore, ¶ 44, 485 P.3d at 1098;
 
 25
 
 see also id. at ¶ 36, 485 P.3d at 1097
 (explaining that "section 16-8-107(3)(b) allows the
 admission of evidence of a mental condition that doesn't
 constitute a 'mental disease or defect' necessitating
 an NGRI plea"); People v. Vanrees, 125 P.3d
 403, 408 (Colo. 2005) (noting that "there is nothing
 within Colorado's statutory insanity framework indicating
 that our General Assembly intended to create an 'all or
 nothing' insanity defense that applies in all cases where
 the defendant presents evidence challenging the culpable
 mental state element of the crime charged"). Therefore,
 to determine whether a defendant's proffered evidence is
 probative of insanity or some other defense, courts should
 consider "whether testimony regarding a mental condition
 meets the definition of insanity"; courts need not
 "yield to a defendant's stated purpose in seeking
 admission of the evidence." Moore, ¶ 38,
 485 P.3d at 1097.
 
 
          ¶43
 That's the statutory analysis.
 
 
          ¶44
 But for CRE 403 purposes, the court must consider whether the
 evidence, which is otherwise admissible (meaning, it has
 passed the court's statutory analysis), should
 nonetheless be excluded because "its probative value is
 substantially outweighed by the danger of unfair prejudice,
 confusion of the issues, or misleading the jury, or by
 considerations of undue delay, waste of time, or needless
 presentation of cumulative evidence." In evaluating
 whether testimony should be excluded under CRE 403, the trial
 court must, therefore, be
 
 26
 
 mindful of the purposes for which the testimony is offered.
 People v. Cooper, 2021 CO 69, ¶ 52, 496 P.3d
 430, 441. So, for the evidentiary analysis, it matters that
 the purpose of some of the mental-condition evidence was to
 rebut the prosecution's argument that Day's
 post-event behavior proved her culpable mental state. Because
 the mental-condition examination may affect the CRE 403
 analysis, we refrain from resolving that evidentiary issue
 now. Instead, we leave it to the trial court to address the
 issue on remand after the examination occurs.
 
 
          ¶45
 Moreover, we agree with the division that the exclusion of
 this evidence wasn't harmless beyond a reasonable doubt.
 The prosecution relied heavily on Day's post-event
 demeanor to prove her culpable mental state, and the trial
 court's ruling denied Day the opportunity to rebut that
 evidence.
 
 
          ¶46
 Therefore, we affirm the division's reversal of Day's
 conviction as to each count for which her culpability was at
 issue, and we remand the case for a new trial consistent with
 this opinion.
 
 
          III.
 Conclusion
 
 
          ¶47
 We affirm the judgment of the court of appeals, albeit on
 slightly different grounds, and we remand the case for
 further proceedings consistent with this opinion.
 
 
           CHIEF
 JUSTICE MARQUEZ, joined by JUSTICE BOATRIGHT and JUSTICE
 BLANCO, dissented.
 
 27
 
           CHIEF
 JUSTICE MARQUEZ, joined by JUSTICE BOATRIGHT and JUSTICE
 BLANCO, dissenting.
 
 
          ¶48
 I agree with the majority that a court may not fault a
 defendant for failing to cooperate with a mental-condition
 examination if the defendant is incompetent at the time of
 the examination. Maj. op. ¶¶ 34-36. But I disagree
 with the majority's conclusion that the trial court
 abused its discretion when it granted the People's motion
 in limine to exclude Maria Laida Day's mental-condition
 evidence.[1] Under section 16-8-107(3)(b), C.R.S.
 (2025), "the defendant is not permitted to introduce
 evidence . . . concerning the defendant's mental
 condition . . . without having undergone a court-ordered
 examination pursuant to section 16-8-106[, C.R.S.
 (2025)]." Because Day had never undergone the requisite
 examination, the trial court was required by statute to
 exclude her proffered mental-condition evidence.
 
 
          ¶49
 The majority avoids this outcome by inexplicably shifting the
 burden of ensuring that the examination takes place from the
 proponent of the evidence, the defense, to the trial court.
 Maj. op. ¶ 37. Though I acknowledge that the frustrating
 series of events in this case are not the fault of any one
 party, the
 
 28
 
 ultimate burden of ensuring that proffered evidence meets the
 statutory requirements must lie with the proponent of the
 evidence, not the trial court. Here, the defense, as the
 proponent of this evidence, had the obligation to ensure that
 the proffered evidence met the statutory requirements of
 section 16-8-107(3)(b) to be introduced at trial. At a
 minimum, defense counsel had an obligation to inform the
 court that the requisite examination had still not taken
 place and to seek enforcement of the court's previous
 order. Defense counsel failed to do so. I cannot agree that
 the trial court abused its discretion by failing, sua sponte,
 to halt the impending trial to enforce an order issued years
 earlier. Rather, the trial court properly excluded the
 evidence on the grounds that no mental-condition evaluation
 had been conducted pursuant to section 16-8-107(3)(b).
 People v. Day, No. 15CR26, at 2 (Dist. Ct., Lake
 Cnty., Dec. 18, 2019) (unpublished order) ("December
 2019 Order"). Because the court's ruling was not
 manifestly arbitrary, unreasonable, unfair, or a
 misapplication of the law, I respectfully dissent.
 
 
          I.
 Section 16-8-107(3)(b) Required the Trial Court to Exclude
 the Evidence
 
 
          ¶50
 When interpreting statutes, our goal is to discern and
 effectuate the legislature's intent. See Town of
 Minturn v. Tucker, 2013 CO 3, ¶ 27, 293 P.3d 581,
 590. In doing so, we "must respect the legislature's
 choice of language." Oakwood Holdings, LLC v. Mortg.
 Invs. Enters. LLC, 2018 CO 12, ¶ 12, 410 P.3d 1249,
 1252.
 
 29
 
 Thus, "[i]f the statutory language is clear, we apply it
 as written." Dep't of Revenue v.
 Agilent Techs., Inc., 2019 CO 41, ¶ 16, 441 P.3d
 1012, 1016.
 
 
          ¶51
 In this case, the language of section 16-8-107(3)(b) is clear
 that the completion of a court-ordered mental-condition
 examination is a mandatory prerequisite to the introduction
 of expert mental-condition evidence: "[T]he defendant is
 not permitted to introduce evidence in the nature of expert
 opinion concerning the defendant's mental condition . . .
 without having undergone a court-ordered examination pursuant
 to section 16-8-106."
 
 
          ¶52
 This language establishes a bright-line rule: If the
 defendant has not undergone a court-ordered mental-condition
 examination, the court may not allow expert mental-condition
 testimony. The statute has no exceptions or qualifiers.
 
 
          ¶53
 Under section 16-8-106(2)(c), if a defendant fails to
 cooperate with personnel conducting an examination, the court
 must preclude defense expert testimony on the defendant's
 mental condition:
 
 
 If the defendant does not cooperate with psychiatrists,
 forensic psychologists, and other personnel conducting the
 examination, the court shall not allow the defendant
 to call any psychiatrist, forensic psychologist, or other
 expert witness to provide evidence at the defendant's
 trial concerning the defendant's mental condition ....
 
 
 (Emphasis added.)
 
 30
 
          ¶54
 This language is also clear. As the majority correctly
 reasons, however, a defendant who is incompetent (and is thus
 unable to understand the proceedings or assist in their
 defense) should not be faulted for failing to cooperate with
 a mental-condition examination, a process that requires a
 defendant's personal participation. See §
 16-8.5-101(12), C.R.S. (2025); Maj. op. ¶¶ 28,
 35-36. Thus, I agree with the majority that the trial court
 erred in holding Day's noncooperation against her because
 she was incompetent at the time of the June 2018 examination.
 
 
          ¶55
 But the conclusion that the trial court erred by considering
 Day's noncooperation under section 16-8-106(2)(c) does
 not change the fact that no mental-condition examination took
 place as required by section 16-8-107(3)(b). The latter
 provision forbids the defense from introducing such evidence
 if an examination has not taken place—regardless of the
 reason. The trial court correctly observed that no exam had
 taken place and that it could deny the introduction of such
 evidence "on this basis alone." December 2019
 Order, at 2. The majority reasons its way around section
 16-8-107(3)(b) by shifting the burden of ensuring that the
 defendant's evidence met the statutory requirement to the
 trial court. Maj. op. ¶ 37.
 
 
          ¶56
 As a fundamental rule, the proponent of evidence bears the
 burden of establishing all the requirements for admission of
 that evidence. This is true whether those requirements are
 statutory, e.g., § 16-8-107(3)(b), or grounded
 in the
 
 31
 
 Colorado Rules of Evidence. See People v. Harris, 43
 P.3d 221, 226 (Colo. 2002) (clarifying that Colorado's
 "rape shield" statute requires the defendant to
 show the evidence meets the statute's requirements for
 admission); see also People v. Vanderpauye, 2023 CO
 42, ¶ 25, 530 P.3d 1214, 1222 (holding that the
 proponent of hearsay evidence bears the burden of
 establishing a hearsay exception); People v.
 Montoya, 753 P.2d 729, 733-34 (Colo. 1988) (holding that
 the prosecution bears the burden of establishing the elements
 for admission of co-conspirator statements); People v.
 Sutherland, 683 P.2d 1192, 1197 (Colo. 1984) (holding
 that the proponent of real evidence bears the burden of
 establishing a chain of custody for such evidence).
 
 
          ¶57
 Yet here, the majority effectively holds that the burden of
 ensuring compliance with section 16-8-107(3)(b) rests with
 the trial court. Maj. op. ¶ 37. The majority's
 reasoning appears to be that (1) the defense met its burden
 simply by notifying the court of its intent to introduce the
 evidence; and (2) once the trial court issued its order for
 the examination to take place, the burden of ensuring the
 examination took place before trial fell on the trial court.
 Id. Although the trial court certainly had the
 authority to enforce its order, I disagree with the
 majority's apparent conclusion that the trial court had
 an affirmative duty to enforce compliance with its order, sua
 sponte, without any notification from the defense.
 Id.
 
 32
 
          ¶58
 The legislature has the power to impose such affirmative
 obligations on trial courts and has done so in specific
 contexts. For example, section 16-8.5-116(3), C.R.S. (2025),
 requires trial courts to conduct periodic reviews of
 incompetency determinations. But even there, the burden is
 shared between the trial court, which conducts the review,
 and the entity evaluating the defendant, which must provide
 the court with updated reports to assist the court in its
 review. Id. By contrast, the majority's holding
 today has no grounding in section 16-8-107(3)(b) (or any
 other provision); it simply imposes the burden on the trial
 court to enforce, sua sponte, an order issued years earlier,
 with no apparent obligation that the defense notify the court
 that an examination has not taken place.
 
 
          ¶59
 The majority's ruling today ignores the reality that
 trial courts rely on notification from the parties to
 effectively and proactively enforce their orders. As a
 routine example, when a trial court orders the prosecution to
 turn over additional evidence under Crim. P. 16, the
 trial court does not have an independent duty to ensure the
 prosecution turns over the evidence. Rather, the defense (the
 party seeking the evidence) has an obligation to notify the
 court of the prosecution's failure to comply, and the
 trial court then enforces its order. The same should be true
 here.
 
 
          ¶60
 The majority nevertheless turns this assumption on its head
 and holds that the trial court abused its discretion by not
 taking additional action, sua sponte, to
 
 33
 
 enforce its order mere weeks before retrial. Maj. op. ¶
 37. I cannot agree. The proponent of the evidence should bear
 the burden of ensuring that the proffered evidence meets the
 statutory requirements. If that compliance requires action by
 the court, then the proponent must at least notify the court
 that action is required.
 
 
          ¶61
 The facts here illustrate why: By the time the trial court
 issued the order excluding the evidence, the case had been
 pending for three and a half years; Day had undergone
 multiple competency evaluations that paused the proceedings;
 the trial court judge who originally issued the
 mental-condition examination order had been replaced by a new
 judge; and the case had been reset for trial following an
 earlier mistrial. Cases with lengthy, complex procedural
 histories like this one exemplify why trial judges must rely
 on the parties to bring issues to the court's attention.
 To be clear, I agree with the majority that a court may not
 fault a defendant who is incompetent for failing to cooperate
 with a mental-condition examination. Here, however, Day had
 been deemed competent in March 2019, several months before
 trial in January 2020. Nothing prevented defense counsel from
 flagging for the trial court during this period that Day had
 still not undergone a mental-condition examination as
 required by section 16-8-107(3)(b) and requesting enforcement
 of the court's previous order for the
 examination.[2] As the
 
 34
 
 proponent of this evidence, the defense bore that burden. The
 majority's holding otherwise in this case undermines this
 careful balance of responsibility between the parties and the
 trial court.
 
 
          II.
 Conclusion
 
 
          ¶62
 Section 16-8-107(3)(b) plainly bars the defense from
 introducing mentalcondition evidence without the defendant
 having undergone a court-ordered examination under section
 16-8-106. Because Day had not undergone such an examination
 before retrial, the trial court properly excluded the
 evidence on that basis alone.
 
 
          ¶63
 In sum, because I cannot agree with the majority that the
 trial court abused its discretion in excluding the evidence
 under the circumstances of this case, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Counsel mistakenly cited section
 16-8-107(2)(b), which doesn't exist, when she presumably
 meant to invoke section 16-8-107(3)(b). Counsel later
 corrected this mistake in a proposed order in March
 2017.
 
 
 [2] We granted certiorari to review the
 following issues:
 
 
 1. Whether the court of appeals erred by holding that
 the trial court abused its discretion in considering
 respondent's non-cooperation with the court-ordered
 mental condition examination.
 
 
 2. Whether the court of appeals improperly expanded
 People v. Moore, 2021 CO 26, 485 P.3d 1088, to
 preclude consideration of the purpose for which mental
 condition evidence is offered when evaluating the
 admissibility of such evidence under CRE 403.
 
 
 [1] Since I would affirm the trial
 court's decision to exclude Day's mental-condition
 evidence because it failed to meet the requirements of
 section 16-8-107(3)(b), C.R.S. (2025), I would not reach the
 other evidentiary questions related to our decision in
 People v. Moore, 2021 CO 26, 485 P.3d 1088, or
 Colorado Rule of Evidence 403.
 
 
 [2] As reflected in the majority's
 timeline of events, Day was deemed competent to proceed in
 March 2019. Maj. op. ¶ 9. The record reflects no efforts
 from the defense to notify the trial court of the incomplete
 mental-condition examination during the eight-plus months
 leading up to trial.
 
 
 ---------